UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ANNE M. VANDERHORST,

      Plaintiff,

-v-

BROOKDALE SENIOR LIVING
COMMUNITIES, INC., et al.

      Defendants.

Case No. 3:12-cv-094

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING IN PART AND OVERRULING IN PART BROOKDALE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR COMPEL ARBITRATION AND STAY PROCEEDINGS (Doc. #4); ORDERING THE PARTIES TO PROCEED TO ARBITRATION; AND DISMISSING THIS CASE**

---

The Plaintiff in this matter is Anne M. Vanderhorst ("Vanderhorst") and the Defendants are Brookdale Senior Living Communities, Inc. ("Brookdale") and John and Jane Does. The John and Jane Does have yet to be identified.

Vanderhorst initially brought her Complaint in the Court of Common Pleas for Miami County, Ohio. The Complaint was then removed to this Court by Brookdale based upon this Court having diversity jurisdiction.

Vanderhorst alleges three Causes of Action. The First is for wrongful termination in violation of Ohio public policy, the Second is for retaliatory discharge and the Third is for defamation. (Doc. #3.) She seeks compensatory and punitive damages, attorneys' fees and a permanent injunction.

Now before the Court is Brookdale's Motion To Dismiss Or Compel Arbitration and Stay Proceedings. (Doc. #4.) This Motion is now fully briefed and ripe for decision.

## RELEVANT FACTUAL BACKGROUND

Brookdale owned and operated a facility known as the Sterling House of Piqua ("Sterling House") located at 1744 West High Street in Piqua, Ohio. (Compl. ¶ 2.) Vanderhorst was employed as a nurse at Sterling House from January 20, 2010, until March 3, 2011. (Id. at ¶ 4.)

Jolene Denson, Brookdale's Business Office Coordinator, says that she conducted Vanderhorst's new hire orientation on January 19, 2010. (Declaration of Jolene Denson ("Denson Decl.") ¶ 4 May 10, 2012.) During Vanderhorst's new-hire orientation, Denson says she provided Vanderhorst with a complete copy of Brookdale's Employment Binding Arbitration Agreement (the "Agreement") to read and review. (Id. at ¶ 6.) The Agreement, according to Denson, was a separately stapled document from the other new hire paperwork that was provided to Vanderhorst. (Id.) Vanderhorst signed the Agreement. (Doc. #4, Ex. A.) Denson says that Vanderhorst did not ask to consult with an attorney regarding the Agreement or the other new-hire paperwork. (Id. at ¶ 9.)

Denson says she also provided Vanderhorst with an Associate Handbook. (Denson Decl. ¶7.) Vanderhorst acknowledged receipt of the Associate Handbook by signing the Associate Handbook Receipt and Acknowledgement. (Doc. #8, Ex. 3.)

Vanderhorst says that none of the documents provided to her during the new hire orientation were discussed in any detail and no mention was made of arbitration. (Affidavit of Anne Vanderhorst ("Vanderhorst Aff.") ¶ 4 Apr. 26, 2012.) She was simply informed that it was necessary to execute, at that time, the documents presented. (Id.) Vanderhorst says that she was not given an opportunity to do anything more than glance at the documents presented to her. (Id.)

Vanderhorst says that she has no recollection of seeing and/or reviewing a copy of the

four-page Agreement at issue here. (Id. at ¶ 5.) She recalls that she was merely presented with the signature page of the Agreement and instructed to sign it. (Id.)

Vanderhorst says that she was not given the opportunity to review the Agreement or any of the other documents with an attorney or given adequate opportunity to even read the documents prior to execution. (Id. at ¶ 6.) She also says the Agreement was not discussed with her at any time during her employment. (Id. at ¶ 7.) Finally, Vanderhorst says that she has never participated in an arbitration and, prior to this action, had no understanding of what an arbitration was or what it entailed. (Id. at ¶ 3.)

## The Agreement

The Agreement provides that disputes that may arise from Vanderhorst's employment or termination must, after attempts to resolve the disputes internally, be submitted for resolution by mandatory binding arbitration. (Doc. #4, Ex. A.) Also, Brookdale agrees to the use of arbitration as the exclusive forum for resolving employment disputes covered by the Agreement. (Id.)

The Parties to the Agreement (Brookdale and Vanderhorst) are both precluded from bringing or raising in court, or another forum, any dispute that was or could have been brought or raised under the procedures set forth in the Agreement. (Id.) Disputes arising from or related to Vanderhorst's employment relationship with Brookdale are to be submitted for final and binding resolution by a private and impartial arbitrator, to be jointly selected by Brookdale and Vanderhorst.

The claims covered by the Agreement include the arbitrability of a controversy or claim. (Id.) The claims covered also include any claim that could be asserted in court or before an administrative agency or claims for which Vanderhorst has an alleged cause of action including

claims for breach of contract, tort, discrimination, wrongful discharge, violation of the Family Medical Leave Act ("FMLA"), violations of confidentiality or breaches of trade secrets, and/or claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance. (Id.)

Claims not covered by the Agreement include claims for workers' compensation benefits, unemployment compensation benefits, claims under the National Labor Relations Act, claims before the Equal Employment Opportunity Commission, claims for injunctive or other equitable relief including, without limitation, claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information. (Id.) Finally, claims not covered include a claim based upon Brookdale's current employee benefits and/or welfare plans that contain an appeal procedure or other procedure for the resolution of disputes under that plan. (Id.)

The Agreement preserves the procedural and substantive rights and remedies that Vanderhorst is afforded under law. (Id.) In addition, the arbitrator must apply the governing substantive law applicable to any claims asserted by Vanderhorst. (Id.) Finally, the costs of the AAA administrative fees and the arbitrator's fees and expenses are initially paid by Brookdale with ultimate responsibility for such costs and expenses to be determined by statue or the arbitrator. (Id.) All other costs and expenses associated with the arbitration are borne by the party incurring the expense unless provided otherwise by statute or the arbitrator. (Id.)

## RELEVANT LEGAL PROVISIONS

The resolution of Brookdale's Motion To Dismiss Or Compel Arbitration turns on the Agreement which is an arbitration agreement. The use of agreements to resolve matters through mandatory arbitration is well recognized. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105,

121 (2001.)

The Federal Arbitration Act ("FAA") was enacted in 1925 to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Equal Employment Opportunity Commission v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)(quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA expresses a strong public policy favoring the arbitration of a wide class of disputes. *Cooper v. MRM Investment Company,* 367 F.3d 493, 498 (6th Cir. 2004). It provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. 9 U.S.C. §§ 3 and 4.

Before compelling a party to arbitrate, the court engages in a limited review to determine whether the dispute is arbitrable. *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The court is to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute is within the substantive scope of that agreement. *Id.*

Arbitration agreements are valid and enforceable except for such grounds as exist at law or in equity for the revocation of any contract. *Id.* "Thus, generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability." *Cooper*, 367 F.3d at 498. Finally, any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. *Javitch*, 315 F.3d at 624.

Under Ohio law, a valid contract exists if there is an offer, an acceptance, contractual capacity, a manifestation of mutual assent and legality of object and of consideration. *Land Lake Employment Group of Akron, LLC v. Columber*, 804 N.E.2d 27, 31 (Ohio 2004)(citing *Kostelnik*

*v. Helper*, 770 N.E.2d 58 (Ohio 2002)). Further, forbearance by an at-will employer from discharging an at-will employee is adequate consideration. *Id.* Finally, for a valid contract to be formed, there must be a "meeting of the minds" as to the essential terms of the agreement *McCarthy, Lebit, Crystall & Haiman Co., L.P.A. v. First Union Management, Inc.*, 622 N.E.2d 1093, 1098 (Ohio Ct. App. 1993).

Under Ohio law, a contract may be unenforceable if it is unconscionable. *Jeffrey Mining Products, L.P. v. Left Fork Mining Co.*, 758 N.E.2d 1173, 1180 (Ohio Ct. App. 2001). Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties and contract terms that are unreasonably favorable to the other party. *Cross v. Carnes*, 724 N.E.2d 828, 837 (Ohio Ct. App. 1998).

Ohio's unconscionability doctrine consists of two prongs: (1) substantive unconscionability and (2) procedural unconscionability. *Jeffrey Mining*, 758 N.E.2d at 1181. Both prongs must exist to find a contract unconscionable. *Id.*

"Substantive unconscionability involves factors relating to the contract terms themselves and whether they are commercially reasonable." *Id.*(citing *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 680 N.E.2d 240, 243 (Ohio Ct. App. 1996)). "Procedural unconscionability involves factors bearing on the parties' relative bargaining position" such as "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply…." *Id.*(citing *Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1294, 1299 (Ohio Ct. App. 1993)).

**ANALYSIS**

Vanderhorst makes four (4) arguments against arbitration of her complaint against Brookdale. Each will be addressed seriatim.

### No Knowing and Intelligent Waiver

Vanderhorst first argues that she did not knowingly and intelligently waive her right to pursue her claims in court. She bases this argument on the Sixth Circuit's holding in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003). However, *Morrison* is not applicable here.

In *Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343, 345 (6th Cir. 2006), the Sixth Circuit held that its holding in *Morrison* is limited to the validity of arbitration clauses in employment agreements where an employee's statutorily created federal civil rights are at issue. In this diversity case, Vanderhorst has asserted Ohio state law claims and has not asserted any federal claims.

Vanderhorst does not cite any cases where Ohio courts have adopted *Morrison's* standard for a knowing and voluntary waiver and this Court is aware of none. Under Ohio law, a party cannot "be excused from knowing what rights [s]he waived by signing" an agreement. *Cole v. Temple Israel*, No. 23243, 2007 WL 162973 at * 3 (Ohio Ct. App. Jan. 24, 2007). Further, "a party to a contract is presumed to have read what he or she signed and cannot defeat a contract by claiming not to have read it." *Id.*(citing *Preferred Capital, Inc. v. Ferris Bros., Inc.*, 856 N.E.2d 984, 987 (Ohio Ct. App. 2005)).

Vanderhorst signed the Agreement and Ohio law does not provide a "knowing and intelligent" requirement. She is not excused from knowing what rights she waived by signing the Agreement and she is presumed to have read what she signed.

**Unconscionable Agreement**

Vanderhorst's second argument is that the Agreement is unconscionable. Thus, under Ohio law, she must show both substantive and procedural unconscionability.

Vanderhorst has not pled or argued that the Agreement is substantively unconscionable, nor does the Affidavit she provided include any factual allegations regarding substantive unconscionability. Indeed, the Agreement has been found not substantively unconscionable by Ohio courts. *See, e.g., McCabe v. Brookdale Senior Living*, No. 11-CVC-01-475 (Franklin Cty. C.P. Jan. 10, 2012.) Thus, Vanderhorst has not shown that the Agreement is substantively unconscionable. This argument fails.

**No Meeting of the Minds**

Vanderhorst next argues that the Agreement is not enforceable under Ohio law because there was not a meeting of the minds. She bases this argument on her affirmation that Brookdale failed to present her with a complete copy of the Agreement.

Yet, Vanderhorst signed at least three different documents that referenced Brookdale's arbitration procedure. On her application for employment, she initialed an acknowledgement indicating that by signing the application, she agreed that any disputes between her and Brookdale would be resolved by final binding arbitration and that Brookdale had provided her with a copy of "that policy." (Denson Decl. Ex. 1.) Vanderhorst acknowledged receipt of a copy of Brookdale's Associate Handbook which receipt indicates that it is her responsibility to read the Associate Handbook and indicates that she agrees to Brookdale's Employment Binding Arbitration policy. Finally, Vanderhorst signed the Agreement.

Vanderhorst argues that there was no meeting of the minds because she does not recall

receiving a complete copy of the Agreement and only glanced at the documents presented to her. Vanderhorst now says that she was only presented with the signature page of the agreement while Denson says Vanderhorst was presented with a complete copy of the Agreement in the form of a separately stapled document. In either case, Vanderhorst's assertion, if true, is unavailing. *See Butcher v. Bally Total Fitness Corp.*, No. 81593, 2003 WL 1785027 at *6 (Ohio Ct. App. Apr. 3, 2003)(whether employee read the paperwork or disregarded the paperwork, she signed the papers stating that she agreed to the terms of the employer's dispute resolution process, thus there was mutual assent). The evidence is clear that Vanderhorst signed at least three documents that plainly indicate the requirement to comply with the Agreement. Thus, she cannot now argue that she did not mutually assent to the Agreement.

## Claim for Injunctive Relief Not Subject To Arbitration

Vanderhorst's final argument is that her claim for injunctive relief is not subject to the Agreement. Brookdale responds that whether Vanderhorst's request for injunctive relief is covered by the Agreement must be determined by the arbitrator.

The Agreement provides that a claim for injunctive or other equitable relief, "including without limitation claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information, for which we may seek and obtain relief from a court of competent jurisdiction" is not covered. Further, the Agreement incorporates the American Arbitration Association's ("AAA's" ) Employment Dispute Resolution Rules.

Courts have found that the AAA's Employment Dispute Resolution Rules provide a "clear and unmistakeable" delegation of scope determination authority to the arbitrator. *See e.g. Bowden v. Delta T. Corp.*, No 06-345-JBC, 2006 WL 3412307 at *7 (E.D. Ky. Nov. 27, 2006).

-9-

Thus, the arbitrator is to determine whether Vanderhorst's claim for injunctive relief is subject to arbitration.

**CONCLUSION**

The Agreement is enforceable, and Vanderhorst's claims are subject to the Agreement. There was a meeting of the minds and the Agreement has not been shown to be unconscionable. Further, a knowing and intelligent waiver has not been shown to be required. Finally, an arbitrator is to determine whether Vanderhorst's claim for injunctive relief is subject to arbitration. Even if it were not, the merits of her claims for legal relief are the same as her claims for injunctive relief and the claims for legal relief should be decided by an arbitrator before this Court considers any request for injunctive relief.

Vanderhorst's claims are arbitrable under the Agreement. The Supreme Court has said that, when a dispute is subject to arbitration, the FAA requires the district court to direct the parties to proceed with arbitration. *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp.2d 746, 756 (S.D. Ohio 2002)(citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Further, the Sixth Circuit has permitted courts to dismiss cases, subject to reinstatement, where there is nothing left for the district court to do but exercise judgment. *Id.* at 756-57(citing *Arnold v. Arnold Corp.-Printed Communications for Business*, 920 F.2d 1269, 1276 (6th Cir. 1990)).

In this case, all of Vanderhorst's claims are within the scope of the Agreement and will be resolved in the course of the arbitration. Therefore, there is nothing left for this Court to do.

Brookdale's Motion To Dismiss Plaintiff's Complaint Or Compel Arbitration and Stay Proceedings is OVERRULED IN PART and GRANTED IN PART. Vanderhorst and Brookdale are directed to proceed with arbitration. A stay is not necessary and Vanderhorst's claims are

dismissed.

**DONE and ORDERED** in Dayton, Ohio this Thirty-First Day of May, 2012.

                                                  **s/Thomas M. Rose**
                                     _____
                                                 THOMAS M. ROSE
                                      UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record